UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
L3 Technologies, Inc. doing business as Narda-MITEQ
and Narda Safety Test Solutions,

                                     Plaintiff,

                -against-

EME Technology International, Inc., Robert Johnson,
Rooftop Antenna Safety Services LLC (formerly known as
Stray Voltage Solutions, LLC d/b/a Contact Voltage
Solutions), Susan Johnson, Wavecontrol S.L., Wavecontrol
Inc., and John and Jane Does Nos. 1-10 (said names being
false and fictitious, as the names
of these other Defendants are unknown at this time),

                                   Defendants.
-----------------------------------------------------------------X

Case No:
17-CV-2287(DRH)(SIL)

**AMENDED COMPLAINT
AND JURY DEMAND**

Plaintiff, L3 Technologies, Inc., doing business as Narda-MITEQ and Narda Safety Test Solutions, by and through its attorneys, **LEVITT LLP**, as and for its Amended Complaint and Jury Demand, herein alleges as follows:

## THE PARTIES

1.       At all times hereinafter mentioned, Plaintiff L3 Technologies, Inc., formerly known as L-3 Communications Corporation (hereinafter referred to as "Plaintiff" or "L3") was, and still is, a corporation authorized and existing under, and by virtue of the laws of the State of Delaware, authorized to do business in New York and with its principal place of business at 600 Third Avenue, in the County of New York, State of New York.

2.       At all times hereinafter mentioned, Narda-Miteq (hereinafter referred to as "Narda") was, and still is, an unincorporated business unit of L3, with its principal place of business at 435 Moreland Road, in the County of Suffolk, State of New York.

3.      At all times hereinafter mentioned, Narda Safety Test Solutions (hereinafter referred to as "Narda STS") was, and still is, an unincorporated business unit of L3, with its principal place of business at 435 Moreland Road, in the County of Suffolk, State of New York.

4.      Upon information and belief, and at all times hereinafter mentioned, Defendant EME Technology International, Inc. (hereinafter referred to as "EME") was, and still is, a corporation, authorized and existing under and by virtue of the laws of the State of New York, with its principal place of business located at 57 Apple Lane, in the County of Suffolk, State of New York.

5.      Upon information and belief, and at all times hereinafter mentioned, Defendant Robert Johnson (hereinafter referred to as "Johnson") was, and still is, the Chief Executive Officer and Principal Executive Officer of EME.

6.      At all times hereinafter mentioned, Johnson was also a full time employee of Narda.

7.      Upon information and belief, and at all times hereinafter mentioned, Defendant Rooftop Antenna Safety Services LLC (hereinafter referred to as "Rooftop") was, and still is, a limited liability company, authorized and existing under and by virtue of the laws of the State of Arizona, with its principal place of business located at 100 South Stellar Parkway, in the City of Chandler, State of Arizona.

8.      Upon information and belief, and at all times hereinafter mentioned, Defendant Rooftop was formerly known as Stray Voltage Solutions, LLC d/b/a Contact Voltage Solutions (hereinafter referred to as "Stray Voltage" or "CVS").

9.      Upon information and belief, and at all times hereinafter mentioned, Defendant Susan Johnson, also known as Susan Ivans (hereinafter referred to as "S. Johnson"), was, and still is, a member of Rooftop.

10.     Upon information and belief, and at all times hereinafter mentioned, Defendant Wavecontrol S.L. was, and still is, a corporation, authorized and existing under and by virtue of the laws of Spain, with its principal place of business located at Carrer de Pallars 65-71, 08018 Barcelona, Spain (hereinafter referred to as "Wavecontrol S.L.").

11.     Upon information and belief, and at all times hereinafter mentioned, Defendant Wavecontrol Inc. was, and still is, a corporation, authorized and existing under and by virtue of the laws of the State of New Jersey, with its principal place of business located 301 Route 17 North, Suite 402, Rutherford, State of New Jersey (hereinafter referred to as "Wavecontrol Inc.").

12.     Defendant Wavecontrol S.L. and Defendant Wavecontrol Inc. are hereinafter, collectively, referred to as the "Defendant Wavecontrol".

13.     Upon information and belief, and at all times hereinafter mentioned, Defendants John and Jane Does Nos. 1-10 are Defendants whose identities are as yet unknown to Plaintiff but who participated in the activities complained of herein in such a manner as to be liable to Plaintiff.

14.     EME, Johnson, Rooftop, S. Johnson, Wavecontrol, John Doe and Jane Doe are sometimes hereinafter collectively referred to as "Defendants".

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction because Plaintiff's Amended Complaint and Jury Demand includes causes of action for violations of the Lanham Act under 15 U.S.C. §

1125 and a cause of action for violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1836, 1839 ("DTSA") and, as such, each cause of action raises a federal question under 28 U.S.C. § 1331.

16.     This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, because the state claims in this action are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy.

17.     This Court has personal jurisdiction over Defendants under N.Y. C.P.L.R. 302(a) because Defendants transacted business within the State of New York or contracted business anywhere to supply goods or services within the State of New York.

18.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS COMMON TO ALL CAUSES OF ACTION

### Plaintiff's Proprietary Information

19.     L3 is a leading provider of a broad range of communication and electronic systems and products used on military, homeland security, and commercial platforms.

20.     Narda STS, among other things, designs, develops and manufactures measuring instruments for electric, magnetic, and electromagnetic fields, and possesses 95% of all the published patents for measuring these fields.

21.     Narda designs, develops, and manufactures state-of-the-art radio frequency (hereinafter referred to as "RF") and microwave components, integrated microwave assemblies, subsystems, and RF safety equipment.

22.     Exposure to RF radiation may be hazardous to an individual's health.

4

23.     Specifically, Narda is a leading manufacturer of monitors that measure RF fields and alert individuals wearing a monitor of hazardous levels of RF radiation.

24.     Over many years, Narda has expended substantial time and money developing its confidential and proprietary information and trade secrets, which include, but are not limited to, a detailed customer database, future business plans and strategies, product costs and prices, lists of customers, potential customers of the company, data, specifications, lists, plans, methods, devices, and compositions or compilations of information the company uses or may use in its business (hereinafter referred to as "Proprietary Information").

25.     Narda's customer database contains detailed information on its existing and prospective customers, including for each customer a contact name, the contact's position, the contact's telephone information, including a cell phone number, an email address, and an office address.

26.     Over many years, Narda expended substantial funds to send its employees, including Johnson, to trainings, conferences and meetings for the purpose of cultivating "key person" contacts with customers and to establish "partnering", "teaming", and other types of relationships between itself and its customers, and by continually collecting, maintaining, validating, and updating the information in the customer database.

27.     As a result of the foregoing, Narda had created an asset in the form of a database of customers and key person contacts and relationships, which was and is a valuable asset, and the property of Narda (hereinafter referred to as the "Customer Database").

28.     L3 has undertaken steps to keep its Proprietary Information secret and confidential, including but not limited to having building security, maintaining sign-in sheets for all visitors, requiring its employees to execute confidentiality agreements, having its employees

abide by a Code of Ethics and Business Conduct, requiring its employees to read and acknowledge its policies, and requiring its employees to participate in its online training modules.

**Plaintiff's Confidentiality Agreements with Johnson**

29.     Johnson was an employee of Narda (and its predecessors) from on or about February 19, 1985 to on or about October 4, 2016.

30.     Johnson became Director of Instrument Products of Narda in or about 2006, and remained in that position throughout the rest of his employment with Narda.

31.     In his capacity as Director of Instrument Products, Johnson's responsibilities included but were not limited to sales of products, development of new products, and interfacing with the customers.

32.     In his position, Johnson had access to, and contact with, Narda's Proprietary Information on a regular basis.

33.     Johnson was aware that L3 has sought to maintain the confidentiality of its Proprietary Information and agreed to maintain the confidentiality of the Proprietary Information.

34.     Johnson executed a Statement and Agreement of Employment, dated February 19, 1985, which stated in pertinent part:

> ...I <u>will not</u>, either during or subsequent to the term of my employment directly or indirectly, <u>divulge to unauthorized persons any information not known to the general public</u> or recognized as standard practice, whether acquired or developed by me in the course of my employment or obtained from other employees; and that I will not, either during or subsequent to the term of my employment, directly or indirectly, <u>publish any such information</u> without written authorization from the Company to do so.

> I will not during the term of my employment, except with the consent of my immediate superior, <u>take out of the Company's plant or office, or disclose to unauthorized persons, any such Company property</u> relating or peculiar to the Company's products, research or development, and that if at the termination of my employment I am in possession of any such Company property, I will return the same at the time of such termination… (emphasis added).

35.     In addition to the preceding reference, L3 has a company-wide Code of Ethics and Business Conduct that requires employees to keep the Proprietary Information confidential, having its employees regularly attend classes and seminars on appropriate business ethics and conduct.  The Code of Ethics and Business Conduct states in pertinent part:

> At L-3, we own, create, or have access to a significant amount of "sensitive information" (e.g., confidential or proprietary information) in the course of conducting our business.  We must protect the confidentiality of all sensitive information, whether obtained from or relating to L-3 and/or its suppliers, customers or other third parties. <u>You should not disclose (even to family) or use any sensitive information for any purpose other than on a "need-to-know" basis within L-3</u>.  This obligation lasts during your entire employment and at all times thereafter.
>
> Because of the extremely sensitive nature of our business, if you must disclose information outside of our Company (for business or legal reasons) contact your local Contracts Organization or Legal Department.  They will assist you in discussing and implementing proper protective measures before disclosure or use of the information.  If you are uncertain or unsure about what information is sensitive, you should contact local Contracts or the Legal Department... (emphasis added).

36.     Johnson executed the Code of Ethics and Business Conduct annually, with his latest execution of such acknowledgement on or about September 29, 2015 (hereinafter referred to as the "Ethics Contract").

37.     Johnson also completed online training modules relating to the Code of Ethics and Business Conduct annually.

38.     L3 also has a Personal Conflict of Interest Policy, which states in pertinent part:

7

L3 expects its employees and officers to refrain from having a financial or other interest in, or relationship with, and organization which competes against, does business with or seeks to do business with L3. This is particularly true in a situation in which the employee represents or has authority for the interests of L-3. Employees must observe high standards of conduct and integrity in their personal relationships with outside organizations. Not only must employees avoid unethical business practices and favoritism, but they should also avoid outside activities and financial interests that might be perceived as involving unethical business practices, favoritism or conflict of interest.

Any employee who is involved with or is about to become involved with a business process or a business decision relating to a current or potential supplier or customer; or who is involved in a competition with another organization, must make an immediate disclosure to the president of the division if the employee or close family member or other member of the household has a financial interest in that current or potential supplier or customer or in the organization involved in the competition.

No employee may serve as an officer or director of any publicly traded corporation or other organization in L3's field of interest unless the details of the proposal relationship have been reported in writing and approved by the Chairman and Chief Executive Officer of L-3. This requirement includes any other corporation or organization even if it does not do business with L-3.

No employee may seek, negotiate or undertake employment with, or furnish services as a consultant or other representative to a firm or entity that competes with, does business with or seeks to do business with L3, unless the proposed relationship has been disclosed and been approved in writing by the division president (or the Chairman and Chief Executive Officer in the case of division and corporate officers).

Employees and officers may not use information about L3 or its business, which they have acquired in the course of their employment and which is not available to the general public, for their own private gain or advantage, nor may they disclose such information to enable others to benefit from it.

Employees should not place themselves in a situation in which they may benefit from a business opportunity if the circumstances indicated that the opportunity should have been made available to L3. A business opportunity which might reasonably be expected to be of interest to L3 must be brought attention of management for a determination of whether L3 wishes to pursue it. Even if L3 decides not to pursue the

> business opportunity, an employee may not on his own or her own pursue that opportunity unless the employee has received written permission from the Chief Executive Officer of L3… (emphasis added).

39.     L3 also has a Personal Use of L3 Communications Assets Policy, which states in pertinent part:

> All employees must refrain from personal use, or acquisition for personal use, of the Corporation's assets [which include L-3's property, materials, equipment, facilities, information and resources].
>
> That while the occasional personal use of L3 assets is permitted, "the activity must not be in support of the personal business, the business of any other corporation or firm, consulting effort or some more profit venture …or otherwise be adverse to its (L3's) interests. (emphasis added).

40.     L3 also has a Capital Accumulation Plan (hereinafter referred to as the "CAP"), which grants restricted stock awards to select employees as an incentive to help promote the success of L3 and maximize shareholder value.

41.     In connection with the CAP, employees are subject to the terms, conditions and restrictions set forth in the L3 Long Term Performance Plan, which states in pertinent part:

> "Moreover, a recipient forfeits restricted stock if he or she acts in a manner contrary to the best interests of L-3 or a subsidiary."

42.     Also, in connection with the CAP, employees sign a Restricted Stock Agreement which states in pertinent part:

> The Participant agrees that he/she will, during such employment, devote his/her entire time, energy and skill to the service of the Corporation or such subsidiary and the promotion of its interests, subject to vacations, sick leaves and other absences in accordance with the regular policies of the Corporation or such subsidiary. If the Participant acts in a manner contrary to the best interests of the Corporation or any of its subsidiaries and his/her employment is terminated (either by the Corporation, such subsidiary or the Participant), the Restricted Stock shall be forfeited immediately. (emphasis added).

43.     Johnson executed a Restricted Stock Agreement with his latest execution of such agreement on or about February 11, 2003.

**Johnson's Resignation**

44.     On or about August 30, 2016, L3 received an anonymous ethics complaint accusing Johnson of participating in activities giving rise to a conflict of interest.

45.     On or about August 30, 2016, L3 commenced an ethics investigation.

46.     As set forth below, even though Johnson participated in the ethics investigation, he failed to disclose pertinent facts and made false statements during the investigation.

47.     On or about October 4, 2016, before the completion of the ethics investigation, Johnson tendered his resignation to Narda and admitted in his resignation letter that he was in violation of his contractual and ethical obligations to Narda.

48.     In his resignation letter, Johnson stated:

> I am hereby resigning my position at Narda-Miteq. It has been brought to my attention that I may have committed a breach of the ethics rules and since that time I have been struggling with the outcome. Even if the company were to allow me to stay at Narda I feel that the spirit if not the rule of ethics has been violated.
>
> The issue relates to Stray Voltage, an area that I have been involved with for many years now. I believe that if Narda decided to pursue that business I could never participate unbiased.
>
> I realize that there are some scheduled tasks upcoming (such as the RFSO course) and I will await your input as to whether or not you want me to complete that or anything else before departing.
>
> I thank Narda for the 30 plus years of employment and wish everyone the best in the years ahead.  (emphasis added).

49.     Upon his resignation, Johnson executed a letter agreement with Narda dated October 12, 2016 (hereinafter referred to as the "Termination Agreement"), wherein he acknowledged that he had and/or would not violate his:

…continuing obligation, and fiduciary obligation, to L3, Narda-Miteq to maintain, protect, not to use, benefit from, or disclose to third parties any confidential information, proprietary data or trade secrets belonging to L3, Narda-Miteq of which you have acquired knowledge or learned as a result of your employment with L3, Narda-Miteq.

Specifically, such confidential or proprietary information would typically include, but not necessarily be limited to future business plans and strategies, product costs and prices, lists of customers, potential customers of the company, data, specifications, lists, plans, methods, devices and compositions or compilations of information the company uses or may use in its business. In this regard, you are specifically cautioned against disclosing any such information to any third parties who are in competition with L3, Narda-Miteq, including but not limited any future employer.

### Johnson's Plan to Misappropriate the Proprietary Information and Divert Corporate Opportunities

50.     The ethics investigation, and further investigation into Johnson's acts after his resignation, revealed that while a full time employee of Narda, Johnson embarked on a scheme and plan, among other things, to:

     a.   misappropriate Narda's Proprietary Information in order to compete with Narda,

     b.   divert Narda corporate opportunities to himself and other Defendants,

     c.   transfer to himself and the other Defendants the good will Plaintiff has built over many years, and

     d.   capitalize on the transfer of good will, along with the other Defendants.

51.     The investigation, which is ongoing, has revealed, among other things, the following:

### a)   Johnson's Formation of a Competing Business

52.     On or about January 31, 2003, Johnson formed his company, Defendant EME.

53.     Defendant EME offered, and continues to offer, trainings in the use of RF safety equipment, site assessments and RF testing and surveys using RF safety equipment – using the

same RF safety equipment that Narda manufacturers (hereinafter collectively referred to as "RF Safety Services").

54.     Defendant EME's website describes itself as "having extensive experience performing surveys and training persons for frequencies between 50 hz and 100 ghz. For over 30 years we have supplied our clients accurate information that allows them to implement the most cost-effective controls…" (emphasis added). Notwithstanding Defendant Johnson's departure from Narda less than one year ago and Defendant Johnson's formation of Defendant EME in 2003, Defendant EME portrays on its website as providing services to customers for over 30 years.

55.     As a result of the aforementioned polices, Defendant Johnson was aware that the formation of Defendant EME created a conflict of interest with his employment by Narda.

56.      Despite being aware of his obligation to disclose conflicts of interest to Narda and in direct contravention to the aforementioned policies, Johnson failed to disclose his formation of EME in 2003 and provided RF Safety Services, on behalf of EME, throughout his employment with Narda.

57.     Johnson used Narda's Proprietary Information to launch and grow his business for his own personal and financial gain, as well as for the benefit of the other Defendants.

58.     In fact, Johnson tailored EME's business model to compete with Narda.

59.     Narda offers an annual RF safety training class to its existing and potential customers, which takes place at sites chosen by Narda, from time to time.

60.     Johnson was aware of the annual RF safety training class Narda offered to its customers and potential customers.

61.     Through EME, Johnson diverted business opportunities belonging to Narda.

62.     In person and by email, Defendant Johnson offered private RF safety training classes to Narda's existing and potential customers, such classes held and to be held at the customers' sites, which competed specifically with the Narda safety training already offered to Narda's existing and potential customers.

63.     Defendant Johnson's classes were specifically priced to undercut Narda's pricing.

64.     In addition to training courses, Johnson used EME to divert other corporate opportunities belonging to Narda.

65.     Existing and potential Narda customers would contact Narda to inquire about Narda RF safety products and services; even while a Narda director, Defendant Johnson would advise existing and potential Narda customers of Defendant EME's services instead of Narda's services.

66.     In fact, Johnson, using Narda's email system, advised one of Narda's customers that the onsite private RF safety training class offered by EME was a "better match" to them than Narda's annual RF safety training class.

67.     Johnson, through EME, provided RF Safety Services to dozens of Narda's customers during his employment with Narda, using Narda's equipment without Narda's approval and without compensating Narda.

68.     Moreover, unbeknownst to L3 and while Defendant Johnson was a full-time Narda employee, Johnson utilized a phone number for EME, to wit, (631) 605-5709, further misrepresenting to Narda customers that EME was a "training" division of and/or the "safety side" of Narda. To point, this was never true.

69.     Johnson marketed and utilized the (631) 605-5709 phone number to communicate with Narda's existing and potential customers.

70.    As such, the (631) 605-5709 phone number has become identified with Plaintiff.

71.    By utilizing the (631) 605-5709 phone number while misrepresenting EME's affiliation with Narda, Johnson diverted Narda's customers to EME.

72.    By utilizing the (631) 605-5709 phone number while misrepresenting EME's affiliation with Narda, Johnson transferred Narda's goodwill to EME.

73.    Now, the (631) 605-5709 phone number is being used by Wavecontrol, Johnson's new employer.

74.    The (631) 605-5709 phone number is listed on Wavecontrol's website as the contact number for Wavecontrol Inc.

75.    Defendants Johnson and EME's continued use of the (631) 605-5709 phone number, for years and while misrepresenting EME's affiliation with Narda, has caused Plaintiff to lose its good will and customers to EME, which is now being transferred to Wavecontrol.

76.    Johnson also exposed Narda to liability by misrepresenting to Narda's existing and potential customers that Narda was conducting RF safety testing and/or Defendant EME was conducting RF safety testing as a part of Narda.

77.    Defendant Johnson deliberately confused Narda's existing and potential customers to believe that business conducted with Defendant EME – a company incorporated by Johnson and with Johnson as the sole principal – was somehow affiliated with Plaintiff – a public fortune 250 company with tens of thousands of employees and years of experience in the field of RF safety equipment.

78.    Johnson made misrepresentations to the public, specifically to Narda's existing and potential customers, that EME was a training or survey division of, the same entity as, or otherwise affiliated with Narda. Defendants represented that Narda performed RF safety testing.

14

79.     Narda sells RF safety equipment to customers who in turn use that equipment to perform RF safety testing of their own facilities.

80.     Narda does not generally conduct RF safety testing of facilities because of the potential liability for any errors in such testing.

81.     Moreover, Johnson advised existing and potential customers that it was not necessary to purchase Narda's RF safety equipment.  Instead, Johnson offered to do the RF safety testing himself, using Narda's RF safety equipment.

82.     By engaging in such activities, Johnson interfered with and prevented the sale of RF safety testing equipment that otherwise would have been purchased by the customer.

83.     Johnson, on numerous occasions, requested reimbursement from Narda for certain travel expenses incurred while Johnson conducted RF safety services to Narda's customers on behalf of EME.

84.     Johnson then requested the customer pay EME directly for Johnson's RF safety services.

b)  <u>Johnson Misrepresentations that EME was Narda</u>

85.     Johnson also used the EME name interchangeably with the Narda name, thereby misrepresenting to the customer that EME was a training or survey division of, the same entity as, or otherwise affiliated with Narda.

86.     By misrepresenting EME's relationship with Narda, Johnson traded off of the good will created and belonging to Narda.

87.     Johnson often, in email and other written communications, referred to EME as the "training side" of Narda and attached Narda's RF Safety Training course overview with Narda's logo on it, passing it off as EME's course overview.

88.     On dozens of occasions known so far, in response to customer inquiries concerning certain Narda services, Johnson generated EME quotes in response to such inquiries.

89.     Johnson made further misrepresentations as to EME's affiliation with Narda in his EME quotes to Narda's customers.  He:

   a.  stated that "EME Technology (Narda) has performed this training many times.",

   b.  utilized Narda's telephone number as EME's telephone number,

   c.  utilized his Narda email address to communicate with Narda customers to send his EME quotes,

   d.  utilized Narda's Vendor number with various Narda customers (which is specific only to Narda) as EME's Vendor number,

   e.  made references stating that EME being a "training division" of Narda, and

   f.  made a reference stating that EME being a "survey division" of Narda.

90.     Johnson misrepresented EME's affiliation with Narda by utilizing an EME logo on communications and quotes to Narda customers, which was confusingly similar to Narda's logo in font, style, and color.

91.     For example, Narda's mark is a black rectangle, utilizing white letters with a black background and a yellow triangle, while EME's logo utilizes a yellow triangle similar to Narda's yellow triangle.

92.     EME's logo also utilizes black letters with a size and font to depict a rectangle similar to Narda's black rectangle.

93.     To Narda's existing and potential customers, Johnson and EME utilized a mark that is confusingly similar to Narda's mark on written communications, including but not limited to quotes and advertising materials such as RF safety training course materials.

94.     In addition to using a mark confusingly similar to Narda's mark, Johnson misrepresented EME's affiliation with Narda by Johnson's use of Narda's email address, telephone number, , email, reputation and other intellectual and tangible property, collectively and/or in a singular instance, in communications with Narda's existing and potential customers.

95.     For example, EME's course overview, distributed to Narda's existing and potential customers in connection with RF Safety training classes, contained EME's logo on top of the page with Narda's name on the bottom.

96.     Johnson also misrepresented to Narda customers that EME was a training or survey division of, the same entity as, or otherwise affiliated with Narda by providing such customer with a falsified Certificate of Liability Insurance.  On one falsified certificate, Johnson surreptitiously named EME as an additional insured "c/o L-3 Communications Corporation" under L3's policy insurance.

97.     On another certificate, Johnson listed EME as an insured under L3's insurance policy.

98.     On both occasions, such falsified document implied that L3 provided insurance for EME's activities, when in fact, L3 did not.

   c)  Johnson's Misappropriation of Proprietary Information

99.     As a result of the investigations, it was also discovered that Johnson accessed and copied the contents of the Narda Customer Database.

100.    Investigations further revealed that Johnson connected a company-issued portable USB drive to Johnson's work computer at the same time Johnson created copies of the contents of the Narda Customer Database. Johnson never returned the USB drive.

17

101.    Concerning the copies Johnson made of the contents of the Narda Customer Database, Johnson exported more than 8,000 contacts from the Customer Database into approximately twenty-three (23) separate excel spreadsheets organized by the letters of the alphabet.

102.    Upon information and belief, Johnson copied the contents of the Narda Customer Database onto his company-issued portable USB drive and retains possession of the USB drive and the contents of Narda's Customer Database.

103.    Upon information and belief, Johnson also exported over 10,000 of his emails from Narda's server on to a USB drive the day before he resigned from Narda, many of which contained Proprietary Information.

104.    Upon information and belief, while the subject of an ethics investigation, Johnson accessed and transferred certain Proprietary Information to a USB drive in the days before he resigned from Narda, including but not limited to: business plans and strategies, sales quotations, weekly customer status reports and sales forecast reports related to other divisions, user manuals for Narda's equipment, presentations relating to Narda's equipment used in Italy, forecasts, Stray Voltage Certification test data, Narda quotes for RF safety products, and IEEE white papers for the performance of RF Safety Services.

d)    Johnson's Transfer and Use of Proprietary Information.

105.    As a result of the investigations, it seems that Johnson transferred certain Proprietary Information to Wavecontrol.

106.    Wavecontrol S.L. is a company based in Spain that was formed in 1997.

107.    Wavecontrol S.L was, and still is, in the same field of business as Narda, which develops test equipment for the assessment of human exposure to electromagnetic ("EM") fields, including RF safety equipment.

108.    Wavecontrol, Inc. was incorporated in the State of New Jersey on March 1, 2017 as Wavecontrol S.L.'s counterpart in the United States.

109.    Wavecontrol's website represents that Johnson is employed by Wavecontrol S.L. and/or Wavecontrol Inc. as a sales representative of RF safety products for the United States counterpart.

110.    That in or about April 2017, a few months after Johnson left the employ of Narda and one month after Wavecontrol Inc. was formed, Narda discovered that Wavecontrol S.L.'s RF Safety Director contacted one of Plaintiffs' vendors.

111.    Based on that conversation, Wavecontrol seemed to have Narda's Proprietary Information in Wavecontrol's possession, specifically Narda's blueprints and drawings.

112.    Any transfer of Proprietary Information from Johnson to Wavecontrol was without Plaintiffs' consent and/or approval.

e)    Johnson's Involvement with CVS (now known as Rooftop)

113.    The investigations further revealed Johnson was involved in another company – a company his wife formed called CVS, which is now known as Rooftop.

114.    Upon information and belief, in or about 2012, Johnson's wife, S. Johnson, along with Sarah Wessel, incorporated CVS, a woman owned small business.

115.    According to the "About Us" page for CVS' website, CVS offers a product line that competes with Narda in the RF safety products field of business.

116.    The CVS website states CVS  can "offer Training, Sales and Service. We can
supply Utilities with a complete portfolio of EMF (ELF through microwave frequencies) safety
products, from Stray Voltage scanning to **RF monitors** for lineman safety". (emphasis added).

117.    Upon information and belief, S. Johnson had no experience in RF safety
equipment; notwithstanding her lack of experience, S. Johnson incorporated CVS.

118.    Again, despite knowing of Johnson's obligation to disclose conflicts of interest to
Plaintiff, and duty not to take for himself Narda business opportunities, Johnson failed to
disclose his and his wife's involvement in CVS.

119.    Instead, Johnson and S. Johnson attempted to conceal the formation of CVS by
using his wife's maiden name, Ivans, and using his wife's mother's home address, 118
Pennsylvania Avenue, Medford, New York on the business documents necessary to incorporate
CVS.

120.    Upon information and belief, Johnson was and is utilizing his wife and her
company, CVS, as a "*front*" for Johnson's RF Safety Services, where Johnson described CVS as
a supplier of RF monitors.

121.    Despite denying any participation in CVS during his ethics investigation, Plaintiff
was able to confirm that Johnson:

   a.   made available to CVS certain Narda products without Narda's approval and
        without requiring the purchase of such Narda products by CVS;

   b.   emailed himself, his wife and other employees at CVS, Narda's Proprietary
        Information, including potential customer information he received and had access
        to through virtue of his position at Narda;

   c.   emailed his wife, at CVS, business information belonging to Narda, including
        Narda's Proprietary Information;

   d.   emailed his wife, at CVS, Requests for Quotes Johnson received from Narda
        customers through Johnson's position at Narda;

e.  maintained a company email address at CVS, to wit, bob@contactvs.com;

f.  emailed employees of CVS about CVS business during his work day at Narda, using Narda's computer and systems;

g.  forwarded images of Narda's products to employees of CVS without Narda's approval;

h.  participated in drafting the "About Us" page for the CVS website;

i.  participated in the creation of the CVS logo and its infrastructure; and

j.  marketed and/or was involved in the marketing of CVS.

f)  Johnson's Conversion of Narda's property

122.    At the time Johnson resigned, he was the Director of Instrument Products of Narda.

123.    In his capacity as Director of Instrument Products, Johnson's responsibilities included, but were not limited to, sales of RF safety products, development of RF safety products, and interfacing with the customers relating to RF safety products.

124.    Therefore, in his capacity as Director of Instrument Products and while an employee of Narda, Johnson had access to Narda's RF Safety equipment and used it on a regular basis.

125.    During the course of his employment, Johnson demonstrated Narda's RF Safety equipment for Narda's customers.

126.    At some point after Johnson resigned from Narda, Narda discovered certain RF Safety equipment belonging to Narda was missing, to wit, three (3) NBM-550 Broadband Field Meters and three (3) E-Field Probes.

127.    As set forth herein, this was at or around the same time Narda discovered that Johnson accessed and transferred certain Proprietary Information of Narda's to a USB drive in the days before he resigned.

128.    Upon information and belief, Johnson was, and is, using Narda's RF safety equipment to provide RF Safety Services to Narda's customers on behalf of EME.

129.    On or about, November 14, 2016, L3 by written correspondence demanded Johnson return the aforementioned RF safety equipment, within forty-eight hours of receipt of the demand.

130.    Johnson refused to return such equipment.

131.    Upon information and belief, Johnson still has in his possession such RF safety equipment belonging to Narda, which he continues to use to conduct his business of providing RF Safety Services.

132.    As a result of the foregoing, as well as other acts to be discovered, L3 has been harmed by Defendants' acts of, among other things, misappropriating Narda's Proprietary Information Plaintiff spent years and significant amounts of time and money developing, competing with Narda, diverting corporate opportunities belonging to Narda, falsifying documents and misrepresenting that EME is a training or survey division of, the same entity as, or otherwise affiliated with Narda.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST JOHNSON, EME, AND WAVECONTROL
### (Violation Of Section 43(A) Of The Lanham Act – 15 U.S.C.§ 1125)

133.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "130" above, as if same were more fully set forth at length herein.

134.    Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) provides, in relevant part, that:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which -

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

**** 

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

135.    By representing to Narda's customers and potential customers of Narda that, *inter alia*, EME is part of, a training or survey division of or otherwise affiliated with Narda, Johnson and EME made false and/or misleading representations and/or descriptions of fact.

136.    Such false and/or misleading representations and/or descriptions of fact is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of EME with Narda.

137.    Such false and/or misleading representations and/or descriptions of fact is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Johnson and EME's services by Narda.

138.    By representing to Narda's customers and potential customers of Narda that EME is part of, a training or survey division of or otherwise affiliated with Narda, Johnson and EME have used a "false designation of origin" of their services that is likely to cause confusion, mistake or deception as to the affiliation, connection or association of EME with Narda and as to

the origin, sponsorship, or approval of EME's services by Narda, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

139.    By creating and utilizing an EME logo which is confusingly similar to Narda's logo, as set forth below, in communicating and soliciting customers and potential customers of Narda, Johnson and EME have used a "symbol" of their services that is likely to cause confusion, mistake or deception as to the affiliation, connection or association of EME with Narda and as to the origin, sponsorship,  or approval of EME's services by Narda, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

140.    EME's use of such a logo with similar colors and shapes, as set forth above, to Narda's logo is likely to cause confusion, mistake or deception as to the affiliation, connection or association of EME with Narda and as to the origin, sponsorship, or approval of EME's services by Narda, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

141.    By communicating with and soliciting customers and potential customers of Narda using L3's email address, telephone number, logo, or combination thereof together with EME's contact information and logo, Johnson and EME have used a "term, name, symbol, or device, or any combination thereof" of their services that is likely to cause confusion, mistake or deception as to the affiliation, connection or association of EME with Narda and as to the origin, sponsorship, or approval of EME's services by Narda, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

142.    By marketing and utilizing the (631) 605-5709 phone number on communications to Plaintiffs' customers and potential customers, including quotations, while misrepresenting to the Plaintiffs' customers that Defendant EME was the "training or survey division" of Narda or

the "safety side" of Plaintiffs, Johnson and EME have used a false designation of origin, false or misleading description of fact, or false or misleading representation of fact.

143.    By Wavecontrol presently marketing and utilizing the (631) 605-5709 phone number, Johnson, EME and Wavecontrol have used a false designation of origin, false or misleading description of fact, or false or misleading representation of fact.

144.    Johnson, EME and Wavecontrol's acts constitute the use in commerce of a symbol, false designations of origin and false and/or misleading descriptions and/or representations of fact, tending to falsely or misleadingly describe and/or represent their services as those of Narda, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

145.    Johnson, EME and Wavecontrol's acts were material and intentional.

146.    Johnson, EME and Wavecontrol's acts were made in interstate commerce.

147.    Johnson, EME and Wavecontrol's acts injured Plaintiff's commercial interests in their reputation and/or sales.

148.    The aforementioned acts and misrepresentations, as well as others yet to be discovered, constitute a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

149.    Johnson, EME and Wavecontrol's acts have caused and will continue to cause irreparable injury to Plaintiff.

150.    As a result of the foregoing, Plaintiff may have no adequate remedy at law and is entitled to injunctive relief, as well as monetary damages as provided by the Lanham Act and New York State common law in an amount not yet determined, including treble damages, attorney's fees and full costs.

## AS AND FOR A SECOND CAUSE OF ACTION
## AGAINST JOHNSON AND EME
### (Federal Trademark Infringement in Violation
### of Section 32 of the Lanham Act – 15 U.S.C. § 1114)

151.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "148" above, as if same were more fully set forth at length herein.

152.    Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), prohibits any person from using in commerce, without the consent of the registrant:

> any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . .

153.    Narda's logo is a federally registered trademark, registered on the principal register of the United States Patent and Trademark Office.

154.    Narda's trademark is distinctive and is associated in the mind of the public with the Narda.

155.    Additionally, based on Narda's extensive advertising, sales, and the popularity of its own products, the Narda trademark have acquired secondary meaning so that the public associates these trademarks exclusively with Narda.

156.    Johnson created and used a logo for EME which resembled Narda's logo and was similar in design, color and style to Narda's logo.

157.    Narda has not authorized Johnson or EME's use of its trademark.

158.    Johnson and EME's unauthorized use of the trademark in connection with the sale of RF Safety Services constitutes the use of Narda's registered marks in commerce.

159.    Johnson and EME's unauthorized use of the trademark is likely to cause confusion, mistake, or deception; cause the public to believe that their services emanate or

26

originate from Narda when they do not, or that Narda has authorized, sponsored, approved or otherwise associated itself with Johnson and EME Defendants.

160.    Johnson and EME's unauthorized use of the trademark has resulted in the m unfairly and illegally benefitting from Narda's goodwill.

161.    The aforementioned acts and misrepresentations, as well as others yet to be discovered, constitute a violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a).

162.    Johnson and EME's acts have caused and will continue to cause irreparable injury to Plaintiff.

163.    As a result of the foregoing, Plaintiff may have no adequate remedy at law and is entitled to injunctive relief, as well as monetary damages as provided by the Lanham Act and New York State common law in an amount not yet determined, including treble damages, attorney's fees and costs.

**AS AND FOR A THIRD CAUSE OF ACTION**
**AGAINST JOHNSON, EME, AND WAVECONTROL**
**(Violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1836, 1839)**

164.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "161" above, as if same were more fully set forth at length herein.

165.    The Defend Trade Secrets Act of 2016 ("hereinafter referred to as "DTSA") 18 U.S.C. § 1836(b)(1) states that:

> "An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."

166.    18 U.S.C. § 1839(5) defines misappropriation, in pertinent part, as the:

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) disclosure or use of a trade secret of another without express or implied consent by a person who -
   (i)    used improper means to acquire knowledge of the trade secret;
   (ii)   he time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was -
        I.  derived from or through a person who had used improper means to acquire the trade secret;
        II.  acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
        III. derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or

\*\*\*\*

167.    Plaintiff is the owner of the Proprietary Information which constitutes trade secrets, as defined by the DTSA.

168.    As set forth above, Plaintiff has taken reasonable measures to keep its Proprietary Information confidential.

169.    Plaintiff's trade secrets are related to products and/or services used in, or intended for use in, interstate or foreign commerce.

170.    Johnson, EME and Wavecontrol misappropriated Plaintiff's trade secrets by acquiring Plaintiff's trade secrets by improper means without Plaintiff's consent.

171.    Johnson, EME and Wavecontrol misappropriated Plaintiff's trade secrets by acquiring, disclosing and/or using Plaintiff's trade secrets without Plaintiff's express or implied consent.

172.    At the time of Johnson's disclosure or use of Plaintiff's trade secrets, Johnson knew or had reason to know that his knowledge of Plaintiff's trade secrets was acquired under circumstances giving rise to a duty to maintain the secrecy of Plaintiff's trade secrets or to limit their use.

173.    Johnson acquired Plaintiff's trade secrets while bound by, inter alia, the terms of his employment agreement, Code of Ethics and Business Conduct, and Termination Agreement with Plaintiff not to disclose such trade secrets.

174.    At the time of Johnson's disclosure or use of Plaintiff's trade secrets, Johnson knew or had reason to know that he owed a duty to Plaintiff to maintain the secrecy of Plaintiff's trade secrets or limit their use.

175.    Johnson's misappropriation of Plaintiff's trade secrets was willful and malicious.

176.    The aforementioned acts, as well as other acts yet to be discovered, constitute a violation of the DTSA.

177.    As a result of the foregoing, Plaintiff has been damaged, continues to be damaged, and demands judgment against Johnson, EME and Wavecontrol in an amount unknown at this time, but believed to be in excess of Three and a Half Million Dollars ($3,500,000.00).

178.    As a result of Johnson, EME and Wavecontrol's misappropriation of Plaintiff's trade secrets, Plaintiff is entitled to damages consisting of reasonable royalties, actual loss, and unjust enrichment pursuant to 18 U.S.C. § 1836(b)(3)(B).

179.    Plaintiff may have no adequate remedy at law.

180.    As a result of the foregoing, Plaintiff is entitled to injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A).

181.    As a result of the foregoing, pursuant to 18 U.S.C. § 1836(b)(3)(C), due to Johnson, EME and Wavecontrol's willful and malicious misappropriation, Plaintiff is entitled to exemplary damages in an amount up to twice the amount of actual damages awarded under 18 U.S.C. § 1836(b)(3)(B).

182.   As a result of the foregoing, due to Johnson, EME and Wavecontrol's willful and malicious misappropriation, Plaintiff is entitled to reasonable attorney's fees pursuant to 18 U.S.C. § 1836(b)(3)(D).

**AS AND FOR A FOURTH CAUSE OF ACTION**
**AGAINST JOHNSON AND EME**
**(Violation of N.Y. Gen. Bus. Law § 349)**

183.   Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "180" above, as if same were more fully set forth at length herein.

184.   New York General Business Law, Section 349 states, in relevant part, that:

"Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

185.   Through their offering to sell and sale of RF Safety Services the public, specifically to Narda's customers and potential customers, Johnson and EME have engaged in consumer-oriented conduct.

186.    By misrepresenting to the public, specifically Narda's customers and potential customers, that EME was an affiliate, training or survey division or association of Narda, Johnson and EME misled the customers and potential customers in believing that Narda conducted RF Safety testing through EME and that it approved and endorsed EME's activities.

187.   Also as set forth above, Narda is a leading providers of RF safety equipment which allows individuals, such as employers, to rely upon Narda for their RF safety equipment.

188.   Therefore, customers and potential customers under the impression that EME is an affiliate, training or survey division or association of Narda would be inclined to purchase EME's services.

189.   Upon information and belief, customers and potential customers, such as employers, made purchasing decisions and/or other related decisions related to RF safety testing

based upon these misrepresentations that would affect their business, and more importantly, the health of their employees.

190.    By virtue of Johnson and EME's deceptive conduct alleged above, Defendants engaged in acts that resulted in a specific and substantial injury to the public interest and adverse impact on the public at large.

191.    Johnson and EME's deceptive acts or practices, as described herein, are materially misleading.

192.    Such acts or practices have misled and/or deceived or have a tendency to mislead and/or deceive a material segment of the public to whom the Johnson and EME have directed their activities, and Plaintiff has been injured thereby.

193.    By the acts described above, as well as others yet to be discovered, Johnson and EME have willfully and knowingly engaged in deceptive acts or practices in the conduct of business and furnishing of services in violation of § 349 of the New York General Business Law.

194.    The acts of Johnson and EME have caused and will continue to cause irreparable injury to Plaintiff.

195.    As a result of the foregoing, Plaintiff may have no adequate remedy at law and is entitled to injunctive relief, as well as monetary damages as provided by the New York General Business Law and New York State common law in an amount not yet determined, including treble damages and attorney's fees.

## AS AND FOR A FIFTH CAUSE OF ACTION
## AGAINST JOHNSON, EME, AND WAVECONTROL
### (Unfair Competition)

196.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs  "1" through "193" above, as if same were more fully set forth at length herein

197.    Plaintiff possesses certain assets and skills that consist of, among other things, the Proprietary Information.

198.    Plaintiff expended funds and labor, and incurred costs in connection with the Proprietary Information.

199.    Johnson, individually and through his company, EME, willfully, intentionally and in bad faith misappropriated these skills, expenditures, and labor of Plaintiff.

200.    Johnson's acts were undertaken to exploit Plaintiff's skills, expenditures, goodwill and labor and to further his own commercial and personal advantage as well as the interests of his company EME and his new employer, Wavecontrol.

201.    Johnson and EME, among other things, misrepresented their affiliation with Narda to divert Plaintiff's customers and business opportunities from Plaintiff to EME and his new employer, Wavecontrol.

202.    Now, Johnson, EME and Wavecontrol, among other things, are presently using the (631) 605-5709 phone number that Johnson and EME used for years to communicate with Plaintiff's customers.

203.    In doing so, Johnson, EME and Wavecontrol are misappropriating Narda's goodwill and creating confusion in the marketplace.

204.    That the acts set forth above, as well as other acts yet to be discovered by Plaintiff, constitute unfair competition.

205.    That the aforementioned  conduct of Johnson, EME and Wavecontrol evidence a high degree of moral turpitude and demonstrates such wanton dishonesty as imply a criminal indifference to their civil obligations, and was part of a pattern of similar conduct directed at the

public generally and not merely an isolated incident; as such, they subject them to punitive damages.

206.    That as a result of the foregoing, Plaintiff has been damaged and demands judgment against Johnson, EME and Wavecontrol in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Three and a Half Million Dollars ($3,500,000.00) and further demands punitive damages in the greater of the amount of One Million Dollars ($1,000,000.00), or One Hundred Twenty Five Percent (125%) of each dollar of profit earned by Johnson and EME as a result of their actions.

## AS AND FOR A SIXTH CAUSE OF ACTION
## AGAINST JOHNSON, EME, AND WAVECONTROL
### (Unfair Business Practices)

207.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "204" above, as if same were more fully set forth at length herein.

208.    Upon information and belief, Johnson, EME and/or Wavecontrol engaged in unfair business practices against Plaintiff by, among other things, misappropriating the Proprietary Information, competing with Narda by, among other things, reducing and/or eliminating sales opportunities for Narda with its customers and potential customers, diverting corporate opportunities belonging to Plaintiff, falsifying documents and misrepresenting that EME is a training or survey division of, the same entity as, or otherwise affiliated with Narda for the purpose of misappropriating upon Narda's goodwill.

209.    That the acts set forth above were conducted by unlawful means by, among other things, fraud, deceit and/or without justifiable cause.

210.    That the acts set forth above caused injury to Plaintiff, the extent of which is unknown to Plaintiff at this time.

211.    That the acts set forth above, as well as other acts yet to be discovered by Plaintiff, constitute unfair business practices.

212.    That the aforementioned conduct of Johnson, EME and Wavecontrol evidence a high degree of moral turpitude and demonstrates such wanton dishonesty as imply a criminal indifference to their civil obligations, and was part of a pattern of similar conduct directed at the public generally and not merely an isolated incident; as such, they subject them to punitive damages.

213.    That as a result of the foregoing, Plaintiff has been damaged and demands judgment against Johnson, EME and Wavecontrol in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Three and a Half Million Dollars ($3,500,000.00) and further demands punitive damages in the greater of the amount of One Million Dollars ($1,000,000.00), or One Hundred Twenty Five Percent (125%) of each dollar of profit earned by Johnson and EME as a result of their actions.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## AGAINST JOHNSON, EME, AND WAVECONTROL
### (Misappropriation of Goodwill)

214.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "211" above, as if same were more fully set forth at length herein.

215.    Plaintiff expended funds and labor, and incurred costs in connection with developing the Proprietary Information.

216.    Plaintiff expended funds and labor, and incurred costs in connection with developing its goodwill and industry reputation.

217.    Johnson and EME misrepresented to Narda's customers and potential customers that EME was an affiliate, training or survey division or association of Narda, thereby

piggybacking on the global reputation of Narda in the industry, and partaking on the goodwill earned by Narda.

218.   Upon information and belief, Johnson intended to associate EME with Narda by use of Narda's telephone number, email, logo and other property.

219.   Upon information and belief, Johnson created and used a logo for EME which resembled Narda's logo and was similar in design, color and style to Narda's logo in order to facilitate its misrepresentation to Narda's customers.

220.   Moreover, Johnson is currently using the (631) 605-5709 phone number he used for years during his employment with Narda and while he was misrepresenting EME's affiliation with Narda.

221.   The (631) 605-5709 phone number is listed on the website of Johnson's new employer, Wavecontrol, as the contact number for Wavecontrol Inc.

222.   The continued use of the (631) 605-5709 phone number has caused Plaintiffs to lose its good will, and its customers, to Defendant EME which is now being transferred to Defendant Wavecontrol.

223.   That good will has, and continues to be, transferred by Defendant Johnson to Defendant EME and Defendant Wavecontrol, and Defendants have capitalized, and will continue to capitalize, on the good will Plaintiffs' have built up over the years.

224.   That the acts undertaken by Johnson and EME were taken to and were intended to mislead the public into believing that services offered and/or provided by Johnson and EME were, in fact, those services offered and/or provided by Narda.

225.   That these acts by Johnson, EME and Wavecontrol created confusion in the marketplace.

226.    That the acts set forth above, as well as other acts yet to be discovered by Plaintiff, constitute misappropriation of good will.

227.    That the aforementioned conduct of Johnson, EME and Wavecontrol evidence a high degree of moral turpitude and demonstrates such wanton dishonesty as imply a criminal indifference to their civil obligations, and was part of a pattern of similar conduct directed at the public generally and not merely an isolated incident; as such, they subject them to punitive damages.

228.    That as a result of the foregoing, Plaintiff has been damaged and demands judgment against Johnson, EME and Wavecontrol in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Three and a Half Million Dollars ($3,500,000.00) and further demand punitive damages in the greater of the amount of One Million Dollars ($1,000,000.00), or One Hundred Twenty Five Percent (125%) of each dollar of profit earned by Johnson and EME as a result of their actions.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
### AGAINST DEFENDANTS
### (Misappropriation of Trade Secrets under New York State Law)

229.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "226" above, as if same were more fully set forth at length herein.

230.    As set forth above, Johnson received the Proprietary Information during the course of his employment with Narda.

231.    That the Proprietary Information was used by Plaintiff in its business, to its sole benefit, and to obtain an advantage in its business.

232.     That despite Johnson's certification that he did not retain any of the Proprietary Information, upon information and belief, Johnson has been and is continuing to utilize such information.

233.     Johnson has wrongfully taken the Proprietary Information and used it for his own benefit and for the benefit of EME in violation of his common law obligations.

234.     Upon information and belief, Johnson has also wrongfully taken the Proprietary Information and used it for the benefit of his new employer, Wavecontrol S.L. and Wavecontrol, Inc. in violation of his common law obligations.

235.     Johnson and EME divulged the Proprietary Information to the other Defendants who are all knowingly in possession of the Proprietary Information.

236.     That such Proprietary Information include:

   a.   potential customer information Johnson received and had access to through virtue of his position at Narda;

   b.   business information belonging to Narda;

   c.   Requests for Quotes Johnson received from Narda customers through his position at Narda, and

   d.   Blueprints and drawings.

237.     Defendants described Rooftop, the company Defendant S. Johnson surreptitiously formed, as a supplier of RF monitors.

238.     That upon information and belief, Defendants misappropriated these trade secrets by improper means.

239.     That upon information and belief, Defendants are marketing their RF monitors to Narda's customer and potential customers.

240.    That upon information and belief, Defendants are using the aforementioned Proprietary Information for their own benefit in conducting their business.

241.    That the acts set forth above, as well as other acts yet to be uncovered by Plaintiff, constitute misappropriation of trade secrets.

242.    That the aforementioned conduct of Defendants evidence a high degree of moral turpitude and demonstrates such wanton dishonesty as imply a criminal indifference to their civil obligations, and was part of a pattern of similar conduct directed at the public generally and not merely an isolated incident; as such, they subject them to punitive damages.

243.    That as a result of the foregoing, Plaintiff has been damaged and demands judgment against Defendants in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Three and a Half Million Dollars ($3,500,000.00) and further demands punitive damages in the greater of the amount of One Million Dollars ($1,000,000.00), or One Hundred Twenty Five Percent (125%) of each dollar of profit earned by Johnson and EME as a result of their actions.

### AS AND FOR AN NINTH CAUSE OF ACTION
### AGAINST JOHNSON AND EME
### (Conversion)

244.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "241" above, as if same were more fully set forth at length herein.

245.    As set forth above, in his capacity as Director of Instrument Products and while an employee of Narda, Johnson had access to Narda's RF Safety equipment and used it on a regular basis.

246.    During the course of his employment, Johnson performed demonstrations of the RF Safety equipment for Narda's customers.

247.    Upon information and belief, Johnson and EME acting individually and/or in concert with other Defendants, the names of which are unknown at this time, converted assets of Narda that Johnson had access to and used on a regular basis in order to perform his duties at Narda.

248.    At some point after Johnson resigned from Narda, Narda discovered certain RF Safety equipment belonging to Narda was missing, including but not limited to, three (3) NBM-550 Broadband Field Meters and three (3) E-Field Probes.

249.    This was at or around the same time Narda discovered that Johnson accessed and transferred certain Proprietary Information of Narda's to a USB drive in the days before he resigned.

250.    Upon information and belief, Johnson converted assets, including but not limited to three (3) NBM-550 Broadband Field Meter and three (3) E-Field Probes, for his own benefit and the benefit of EME at Plaintiff's expense.

251.    That the converted assets were and are the legitimate property of Plaintiff.

252.    Upon information and belief, Johnson and EME exercised dominion and/or ownership over said property through their actions described above, in addition to other acts yet to be discovered, and have possession of said property.

253.    Upon information and belief, Johnson was and is using Narda's RF safety equipment to provide RF Safety Services.

254.    Upon information and belief, Johnson and EME's exercise of dominion and control over said assets is wrongful and without the authorization of Plaintiff.

255.    Plaintiff is entitled to the return of all property in possession of Johnson and EME or other third parties.

256.    By written correspondence dated November 14, 2016, Narda demanded the return of the equipment.

257.    To date, Johnson and EME have failed to return said assets to Plaintiff.

258.    That the aforementioned acts of Johnson and EME, as well as other acts yet to be uncovered by Plaintiff, constitute conversion of the assets of Plaintiff.

259.    That as a result of the foregoing, Plaintiff has been damaged and demands judgment against Johnson and EME an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Forty Thousand Dollars ($40,000.00).

## AS AND FOR AN TENTH CAUSE OF ACTION
## AGAINST DEFENDANTS
## (Unjust Enrichment)

260.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in Paragraphs "1" through "257" above, as though more fully set forth at length herein.

261.    As set forth above, that over the course of many years, Plaintiff expended substantial time, effort and money to build and promote its business.

262.    Narda also has expended substantial time and money developing its Proprietary Information and creating a Customer Database.

263.    That due to Johnson's employment with Narda, Defendants were placed in a position to exploit such efforts of Plaintiff and to realize substantial profits, assets and/or benefits from such efforts of Plaintiff which profits, assets and/or benefits are in fact the legitimate property of Plaintiff.

264.    That as set forth herein, Johnson divulged to Wavecontrol, EME, Rooftop and his wife, S. Johnson, Narda's Proprietary Information he received and had access to through virtue of his position at Narda, including, but not limited to potential customer information, business

information, Requests for Quotes Johnson received from Narda customers, blueprints and drawings.

265.   That Johnson was aware that Wavecontrol and Rooftop was, in the same business as Narda.

266.   That Johnson and S. Johnson benefitted from receiving the aforementioned customer and business information to conduct their businesses, EME and Rooftop, respectively.

267.   That Wavecontrol also benefitted from receiving the aforementioned Proprietary Information to conduct its businesses.

268.   That as a result of the foregoing, Defendants received the profits, assets and/or benefits of Plaintiff and have not compensated Plaintiff for same.

269.   That as a result of the foregoing, as well as other acts yet to be uncovered by Plaintiff, it is against equity and good conscience to permit Defendants to exploit and retain these profits, assets and/or benefits because the Defendants have been unjustly enriched.

270.   That the aforementioned conduct of Defendants evidence a high degree of moral turpitude and demonstrates such wanton dishonesty as imply a criminal indifference to their civil obligations, and was part of a pattern of similar conduct directed at the public generally and not merely an isolated incident; as such, they subject them to punitive damages.

271.   That as a result of the foregoing, Plaintiff has been damaged and demands judgment against Defendants in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Three and a Half Million Dollars ($3,500,000.00) and further demands punitive damages in the greater of the amount of One Million Dollars ($1,000,000.00), or One Hundred Twenty Five Percent (125%) of each dollar of profit earned by Defendants as a result of their actions.

## AS AND FOR A ELEVENTH CAUSE OF ACTION
## AGAINST DEFENDANT JOHNSON
### (Diversion of Corporate Opportunity)

272.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "269" above, as if same were more fully set forth at length herein.

273.    That as set forth above, Johnson was an employee of Narda.

274.    That Johnson without the consent of Plaintiff, diverted and exploited for his own benefit, and/or for the benefit of individuals and/or entities other than Plaintiff, such as EME, Rooftop, S. Johnson, Wavecontrol S.L. and Wavecontrol Inc. corporate opportunities that belonged to Plaintiff.

275.    That Plaintiff had a lawful interest and/or tangible expectancy in said business opportunities.

276.    That the aforementioned acts of Johnson, as well as other acts yet to be uncovered by Plaintiff, constitute a diversion of corporate opportunities.

277.    That the aforementioned conduct of Johnson evidence a high degree of moral turpitude and demonstrates such wanton dishonesty as imply a criminal indifference to their civil obligations, and was part of a pattern of similar conduct directed at the public generally and not merely an isolated incident; as such, they subject them to punitive damages.

278.    That as a result of the foregoing, Plaintiff has been damaged and demands judgment against Defendant Johnson in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Three and a Half Million Dollars ($3,500,000.00) and further demands punitive damages in the greater of the amount of One Million Dollars ($1,000,000.00), or One Hundred Twenty Five Percent (125%) of each dollar of profit earned by Defendants as a result of their actions.

## AS AND FOR A TWELFTH CAUSE OF ACTION
## AGAINST JOHNSON, EME, AND WAVECONTROL
### (Tortious Interference with Prospective Business Relations)

279.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "276" above, as if same were more fully set forth at length herein.

280.    As set forth above, Johnson's responsibilities as Director of Instrument Products, included, but were not limited to, sales of products, development of new products, and interfacing with the customers.

281.    Johnson interfaced with Narda's customers on a daily basis.

282.    That Johnson, EME and Wavecontrol knew that Narda had ongoing business relationships and/or prospective contractual relationships with its customers and/or potential customers.

283.    Johnson, EME and/or Wavecontrol interfered with those prospective contractual relationships by the actions set forth above, as well as other acts to be uncovered, including communicating with Narda's customers to offer and quote RF Safety Services to them.

284.    That his actions, among other things, induced Narda's customers and prospective customers not to purchase RF safety equipment if they could receive RF Safety Services through EME, thereby interfering with Narda's relationship with its customers and prospective customers.

285.    The interference by Johnson, EME and Wavecontrol was intentional, malicious, and without lawful justification and Johnson and EME acted with an improper motive and/or used wrongful means to interfere with those prospective contractual relations.

286.    That the acts set forth above, as well as other acts yet to be uncovered by Plaintiff, constitute tortious interference with prospective contractual relations.

287.    That the aforementioned conduct of Johnson, EME and Wavecontrol evidence a high degree of moral turpitude and demonstrates such wanton dishonesty as imply a criminal indifference to their civil obligations, and was part of a pattern of similar conduct directed at the public generally and not merely an isolated incident; as such, they subject them to punitive damages.

288.    That as a result of the foregoing, Plaintiff has been damaged and demands judgment against Johnson, EME and Wavecontrol in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Three and a Half Million Dollars ($3,500,000.00) and further demands punitive damages in the greater of the amount of One Million Dollars ($1,000,000.00), or One Hundred Twenty Five Percent (125%) of each dollar of profit earned by Defendants as a result of their actions.

### AS AND FOR A THIRTEENTH CAUSE OF ACTION
### AGAINST JOHNSON
### (Breach of Loyalty Based upon Ethics Handbook)

289.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "286" above, as if same were more fully set forth at length herein.

290.    In his capacity as a full-time employee of Narda, Johnson was obligated to devote 100% of his time to the business interests of Narda.

291.    Johnson, by virtue of such employment with Narda, owed a common law duty of loyalty to Narda, and was bound to perform his duties and serve with the utmost good faith and loyalty, with that degree of care which an ordinarily prudent person in any like position would use under similar circumstances.

292.    That such duties included, among other things, the obligation to refrain from misappropriating the Proprietary Information Plaintiff spent years and significant amounts of

money developing, competing with Narda, diverting corporate opportunities belonging to Narda, falsifying documents and misrepresenting that EME is a training or survey division of, the same entity as, or otherwise affiliated with Narda.

293.    Johnson, also executed and agreed to be bound by the Ethics Contract, which restricts employees from improperly disclosing or using confidential or proprietary information and prohibits employees from acting contrary to Narda's interests.

294.    That Johnson failed to exercise the required degree of care and failed to perform his duties in good faith, and upon information and belief, engaged in, and continues to engage in, activities which are competitive with and/or related to the Narda's business, as confirmed in the Termination Agreement.

295.    That the aforementioned acts of Johnson, as well as other acts to be discovered, constitute breach of common law duty of loyalty owed to Plaintiff.

296.    That the aforementioned conduct of Johnson evidence a high degree of moral turpitude and demonstrates such wanton dishonesty as imply a criminal indifference to their civil obligations, and was part of a pattern of similar conduct directed at the public generally and not merely an isolated incident; as such, they subject them to punitive damages.

297.    That as a result of the foregoing, Plaintiff has been damaged and demands judgment against Johnson in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Three and a Half Million Dollars ($3,500,000.00) and further demands punitive damages in the greater of the amount of One Million Dollars ($1,000,000.00), or One Hundred Twenty Five Percent (125%) of each dollar of profit earned by Johnson as a result of his actions.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION
## AGAINST JOHNSON, EME, AND WAVECONTROL
### (Accounting)

298.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "295" above, as if same were more fully set forth at length herein.

299.    That Johnson had a confidential and/or fiduciary relationship with Plaintiff, which was created by his employment with Plaintiff.

300.    That Johnson is in complete control of the financial records which would establish the extent to which he has received monies by the aforementioned acts.

301.    That as a result of the foregoing, Johnson has a duty to account for monies wrongfully received and diverted.

302.    That Plaintiff may have no adequate remedy at law.

303.    That as a result of the foregoing, Plaintiff has been damaged and demand of EME and Wavecontrol a full and formal accounting to determine the amount of monies owed to Plaintiff.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION
## AGAINST JOHNSON, EME, AND WAVECONTROL
### (Imposition of a Constructive Trust)

304.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "301" above, as if same were more fully set forth at length herein.

305.    That Johnson had a confidential and/or fiduciary relationship with Plaintiff, which was created by his employment with Plaintiff.

306.    That due to Johnson's full-time employment with Narda he was obligated to refrain from misappropriating the Proprietary Information Plaintiff spent years and significant amounts of money developing, competing with Narda, misappropriating the good will associated

to Plaintiff, diverting corporate opportunities belonging to Narda, falsifying documents and

misrepresenting that EME is a training or survey division of, the same entity as, or otherwise

affiliated with Narda.

307.    That Johnson, EME and Wavecoontrol are knowing transferees of the foregoing.

308.    That such acts caused the Johnson, EME and Wavecoontrol to receive economic

benefits that they would not otherwise have received, but for the efforts of Plaintiff.

309.    That Johnson, EME and Wavecoontrol paid insufficient and/or no consideration

for the foregoing.

310.    That it would be against equity and good conscience to permit Johnson, EME and

Wavecoontrol to retain these benefits because they will have been unjustly enriched thereby.

311.    That as a result of such acts, as well as other acts to be uncovered, Johnson, EME

and Wavecoontrol are constructive trustees, ex malificio, of such assets.

312.    That acting in concert with the other Defendants, Johnson and EME took

improper advantage of and/or otherwise abused the relationship described above, as a result of

the aforementioned acts.

313.    Plaintiff is entitled to the profits derived therefrom, and any assets, monies,

properties, and the like otherwise diverted and/or converted by Johnson, EME and

Wavecoontrol.

314.    That Plaintiff may have no adequate remedy at law.

315.    That as a result of the foregoing, the Plaintiff has been damaged and demands that

a constructive trust be imposed over the property of Johnson, EME and Wavecoontrol, including

but not limited to a) the proceeds of any and all transactions entered into between Johnson, EME

and Wavecoontrol and any customer of Plaintiff and b) the assets of and all profits earned by

Johnson, EME and Wavecoontrol with respect to such diverted business opportunities they transacted.

## AS AND FOR A SIXTEENTH CAUSE OF ACTION
## AGAINST JOHNSON
### (Breach of Restricted Stock Agreement)

316.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "313" above, as if same were more fully set forth at length herein.

317.    Johnson executed the Restricted Stock Agreement and agreed to be bound by the terms thereof.

318.    Plaintiff has fully complied with all of its obligations to Johnson under the Restricted Stock Agreement.

319.    Johnson violated the Restricted Stock Agreement by, among other things, misappropriating the Proprietary Information Plaintiff spent years and significant amounts of time and money developing, competing with Narda, misappropriating the good will associated to Plaintiff, diverting corporate opportunities belonging to Narda, falsifying documents and misrepresenting that EME is a training or survey division of, the same entity as, or otherwise affiliated with Narda.

320.    That the aforementioned acts of Johnson as well as other acts to be discovered constitute a breach of the Restricted Stock Agreement.

321.    That as a result of the foregoing, Plaintiff has been damaged and demands judgment against Johnson for an order directing the forfeiture of any stock Johnson received under the Restricted Stock Agreement or in the event that such stock was sold, then a constructive trust be imposed over any proceeds.

### AS AND FOR A SEVENTEENTH CAUSE OF ACTION
### AGAINST DEFENDANTS
### (Permanent Injunction)

322.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "319" above, as if same were more fully set forth at length herein.

323.    Plaintiff may have no adequate remedy at law.

324.    Based on the foregoing, a substantial likelihood exists that Plaintiff will suffer and continue to suffer serious irreparable injury through Defendants' acts in the absence of injunctive relief.

325.    A balancing of the equities strongly weights in favor of Plaintiff such that injunctive relief is appropriate in Plaintiff's favor.

326.    Plaintiff may be entitled to a temporary, preliminary and permanent injunction enjoining Defendants from, among other things, utilizing the Proprietary Information Plaintiff spent years and significant amounts of time and money developing, utilizing L3's logo, utilizing Narda's RF Safety equipment, misappropriating the good will associated to Plaintiff, diverting corporate opportunities belonging to Narda and misrepresenting that EME is a training or survey division of, the same entity as, or otherwise affiliated with Narda.

### AS AND FOR A EIGHTEENTH CAUSE OF ACTION
### AGAINST DEFENDANT JOHNSON
### (Faithless Servant)

327.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "324" above, as if same were more fully set forth at length herein.

328.    In his capacity as Director of Instrument Products, Johnson's duties included, but were not limited to sales of products, development of new products, and interfacing with the customers in connection with RF Safety products.

329.    That Johnson was prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.

330.    However, while a full time employee of Narda, Johnson misappropriated Narda's Proprietary Information and good will, Johnson having surreptitiously formed a competing business with Narda and diverted corporate opportunities belonging to Narda to himself and other Defendants.

331.    That by virtue of his acts, Johnson, on a daily basis, misrepresented to Narda that he was a full-time employee of Narda when in actuality he was also an employee of EME.

332.    That the aforementioned disloyal acts of Johnson were related to the performance of his duties for Narda.

333.    That such disloyalty permeated Johnson's service to, and violated his employment with, Narda in its most material and substantial part.

334.    Instead of furthering Narda's interests in the field of RF safety products and performing his duties for Narda, Johnson used Narda's Proprietary Information and his position to further his personal interests, and those of his company, EME, and the other Defendants in the field of RF Safety products.

335.    Johnson used Narda's email system, facilities, Proprietary Information and other resources of Narda to conduct his own business.

336.    Johnson also, on numerous occasions, requested reimbursement from Narda for certain travel expenses that he incurred while conducting RF Safety Services to Narda's customers on behalf of EME.

337.   Johnson would then request the customer to pay EME directly for his RF Safety Services.

338.   That the aforementioned acts of Johnson as well as other acts to be discovered were adverse to Narda's interests.

339.   That as a result of the foregoing, Plaintiff has been damaged and demands judgment against Johnson for an order directing the forfeiture of any compensation Johnson was paid during the period when, still employed by Plaintiff, was engaged in such disloyal acts and a disgorgement of profits received as a result of his disloyal and faithless acts.

340.   That the aforementioned conduct of Johnson evidence a high degree of moral turpitude and demonstrates such wanton dishonesty as imply a criminal indifference to their civil obligations, and was part of a pattern of similar conduct directed at the public generally and not merely an isolated incident; as such, they subject them to punitive damages.

341.   That as a result of the foregoing, Plaintiff has been damaged and demands judgment against Johnson in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of One Million Dollars ($1,000,000.00) and further demands punitive damages in the greater of the amount of One Million Dollars ($1,000,000.00), or One Hundred Twenty Five Percent (125%) of each dollar of profit earned by Johnson as a result of his actions.

**WHEREFORE**, Plaintiff has been damaged and demands judgment against Defendants as follows:

**As and for the First Cause of Action** against Johnson, EME and Wavecontrol, Plaintiff may have no adequate remedy at law and is entitled to injunctive relief, as well as monetary

damages as provided by the Lanham Act and New York State common law in an amount not yet determined, including treble damages, attorney's fees and full costs.

**As and for the Second Cause of Action** against Johnson and EME, Plaintiff may have no adequate remedy at law and is entitled to injunctive relief, as well as monetary damages as provided by the Lanham Act and New York State common law in an amount not yet determined, including treble damages, attorney's fees and full costs.

**As and for the Third Cause of Action** against Johnson, EME and Wavecontrol, in an amount unknown at this time, including double damages, attorney's fees and full costs, but believed to be in excess of Three and a Half Million Dollars ($3,500,000.00).

**As and for the Fourth Cause of Action** against Johnson and EME, Plaintiff may have no adequate remedy at law and is entitled to injunctive relief, as well as monetary damages as provided by the New York General Business Law and New York State common law in an amount not yet determined, including treble damages and attorney's fees.

**As and for the Fifth Cause of Action** against Johnson, EME and Wavecontrol, Plaintiff has been damaged and demands judgment against Johnson and EME in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Three and a Half Million Dollars ($3,500,000.00) and further demands punitive damages in the greater of the amount of One Million Dollars ($1,000,000.00), or One Hundred Twenty Five Percent (125%) of each dollar of profit earned by Johnson and EME as a result of their actions.

**As and for the Sixth Cause of Action** against Johnson, EME and Wavecontrol, in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Three and a Half Million Dollars ($3,500,000.00) and further demands punitive damages in the

greater of the amount of One Million Dollars ($1,000,000.00), or One Hundred Twenty Five Percent (125%) of each dollar of profit earned by Johnson and EME as a result of their actions.

**As and for the Seventh Cause of Action** against Johnson, EME and Wavecontrol, in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Three and a Half Million Dollars ($3,500,000.00) and further demand punitive damages in the greater of the amount of One Million Dollars ($1,000,000.00), or One Hundred Twenty Five Percent (125%) of each dollar of profit earned by Johnson and EME as a result of their actions.

**As and for the Eighth Cause of Action** against Defendants, in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Three and a Half Million Dollars ($3,500,000.00) and further demands punitive damages in the greater of the amount of One Million Dollars ($1,000,000.00), or One Hundred Twenty Five Percent (125%) of each dollar of profit earned by Johnson and EME as a result of their actions.

**As and for the Ninth Cause of Action** against Johnson and EME, an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Forty Thousand Dollars ($40,000.00).

**As and for the Tenth Cause of Action** against Defendants, in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Three and a Half Million Dollars ($3,500,000.00) and further demands punitive damages in the greater of the amount of One Million Dollars ($1,000,000.00), or One Hundred Twenty Five Percent (125%) of each dollar of profit earned by Defendants as a result of their actions.

**As and for the Eleventh Cause of Action** against Defendant Johnson, in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Three and a Half Million Dollars ($3,500,000.00) and further demands punitive damages in the greater of

the amount of One Million Dollars ($1,000,000.00), or One Hundred Twenty Five Percent (125%) of each dollar of profit earned by Defendants as a result of their actions.

**As and for the Twelfth Cause of Action** against Johnson, EME and Wavecontrol, in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Three and a Half Million Dollars ($3,500,000.00) and further demands punitive damages in the greater of the amount of One Million Dollars ($1,000,000.00), or One Hundred Twenty Five Percent (125%) of each dollar of profit earned by Defendants as a result of their actions.

**As and for the Thirteenth Cause of Action** against Johnson, in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Three and a Half Million Dollars ($3,500,000.00) and further demands punitive damages in the greater of the amount of One Million Dollars ($1,000,000.00), or One Hundred Twenty Five Percent (125%) of each dollar of profit earned by Johnson as a result of his actions.

**As and for the Fourteenth Cause of Action** against Johnson, a full and formal accounting of EME and Wavecontrol to determine the amount of monies owed to Plaintiff.

**As and for the Fifteenth Cause of Action**, a constructive trust be imposed over the property of Johnson, EME and Wavecontrol, including but not limited to a) the proceeds of any and all transactions entered into between Johnson, EME and Wavecontrol and any customer of Plaintiff and b) the assets of and all profits earned by Johnson, EME and Wavecontrol with respect to such diverted business opportunities they transacted.

**As and for the Sixteenth Cause of Action** against Johnson, for an order directing the forfeiture of any stock Johnson received under the Restricted Stock Agreement or in the event that such stock was sold, then a constructive trust be imposed over any monies, or any assets Johnson purchased with such proceeds.

**As and for the Seventeenth Cause of Action** against Defendants, Plaintiff may be entitled to a temporary, preliminary and permanent injunction enjoining Defendants from, among other things, utilizing the Proprietary Information Plaintiff spent years and significant amounts of time and money developing, utilizing L3's logo, utilizing Narda's RF safety equipment, misappropriating the good will belonging to Narda, diverting corporate opportunities belonging to Narda and misrepresenting that EME is a training or survey division of, the same entity as, or otherwise affiliated with Narda.

**As and for the Eighteenth Cause of Action** against Johnson, in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of One Million Dollars ($1,000,000.00) and further demands punitive damages in the greater of the amount of One Million Dollars ($1,000,000.00), or One Hundred Twenty Five Percent (125%) of each dollar of profit earned by Johnson as a result of his actions.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiffs demand trial by jury in this action of all issues so triable.

Dated: Mineola, New York
        August 17, 2017

LEVITT LLP

By: _____
        Steven L. Levitt, Esq.
        Irene Tenedios, Esq.
        Attorneys for Plaintiffs
        129 Front Street
        Mineola, New York 11501
        (516) 248-9700
        slevitt@levittlawllp.com
        itenedios@levittlawllp.com

To:    EME Technology International, Inc.
57 Apple Lane
Medford, New York 11763

Robert Johnson
57 Apple Lane
Medford, New York 11763

Rooftop Antenna Safety Services LLC
(f/k/a Stray Voltage Solutions, LLC
d/b/a Contact Voltage Solutions)
100 South Stellar Parkway
Chandler, Arizona  85226

Susan Johnson
57 Apple Lane
Medford, New York 11763

Wavecontrol, S.L.
Carrer de Pallars 65-71
08018 Barcelona, Spain

Wavecontrol, Inc.
301 Route 17 North, Suite 402,
Rutherford, State of New Jersey